## BOARDMAN *against* STEELE.

*A* sold land to *B* for 1100 dollars, of which 100 dollars was to be paid in cash, and the residue in two notes of *C*, for 500 dollars each, to be indorsed by *D* and by *B*. The 100 dollars in cash was paid down; and the agent of *B*, shortly afterwards, offered *A* two notes of *C*, for 500 dollars each, payable in one year, indorsed by *D*, but not indorsed by *B*; which *A* refused to accept, for want of *B's* indorsement. It was then proposed, by the agent of *B*, in *B's* absence, and agreed to by *A*, that *B* should give *A* a writing promising to indorse those notes. *B* gave such writing accordingly; and thereupon *A* received the notes, and delivered a deed of the land to *B*. *B* neglected to indorse the notes. Before they came to maturity, *A* lodged them in a bank for collection; and when due, the notary of the bank, having made the usual enquiries for *C*, the maker, without finding him, protested them for non-payment, and gave due notice. They were then put in suit against *C* and *D*, and judgments obtained; but the executions were returned unsatisfied, *C* and *D* being insolvent. In an action of *assumpsit*, brought by *A* against *B*, for the price of the land, it was held, 1. that the delivery to *A* of the notes, unindorsed by *B*, together with such written promise of *B*, was neither payment of the land, nor a waiver of *A's* right to *B's* indorsement; 2. that *B*, having neglected, in violation of his agreement, to become an indorser, could not claim the right of an indorser, as against *A*, nor hold *A* to the situation of an indorsee; consequently, whether all the diligence necessary to subject an indorser, had been used or not, *A* was entitled to recover.

THIS was an action of *assumpsit* for the price of land sold and conveyed to the defendant.

There were two counts in the declaration. The first was general, stating, that on the 15th of *December*, 1836, the defendant became and was indebted to the plaintiff, in the sum of 1000 dollars, for divers lands lying in the county of *Essex*, in the state of *Vermont*, before that time bargained, sold and conveyed, by the plaintiff, to the defendant, at his, the defendant's, special instance and request; and being so indebted, the defendant afterwards, *viz.* at the city of *New-York*, on the day and year last aforesaid, in consideration thereof, undertook, &c.

The second count was special, alleging, That on the 21st of *November*, 1836, at the city of *New-York*, in consideration that the plaintiff, at the special instance and request of the defendant, would deliver to *Elias Holt,* as the agent of the defendant, a deed of the plaintiff, conveying to the defendant certain lands lying in the county of *Essex*, in the state of *Vermont,* which the plaintiff had, before that time, bargained with said *Holt*, acting as the agent of the defendant, to sell and convey to the defendant, for the consideration of 1100 dollars, whereof the sum of 100 dollars was payable in cash, on the delivery of the deed, and the residue in two promissory notes, each of the sum of 500 dollars, dated, one on the 15th, and the other on the 25th, of *October*, 1836, signed by *John Pendleton*, and payable twelve months after their dates respectively, to the order of *James De Forest*, and by him endorsed, and to be further endorsed by the defendant; and would receive, as part of the consideration aforesaid, said notes without the endorsement of the defendant, at the time of the delivery of said deed, but on the agreement that said notes should be endorsed by the defendant, as herein after mentioned; he, the defendant, undertook, and then and there faithfully promised the plaintiff, that he, the defendant, would endorse said notes respectively, within a reasonable time thereafter, when he should go to *New-York*, where the plaintiff then and ever since resided: that the plaintiff, confiding in such promise and undertaking of the defendant, did, at said city of *New-York*, on the day and year last aforesaid, deliver to said *Holt*, as agent for the defendant, his, the plaintiff's, deed, by him duly executed and acknowledged, conveying

said lands to the defendant, and did receive said notes respectively without the endorsement of the defendant thereon, and before said notes, or either of them, became due and payable, by the tenor thereof: that although the defendant did, in fact, soon thereafter, *viz.* on the 25th of *December,* 1836, and before said notes, or either of them, became due and payable, go to *New-York;* yet the defendant, his promise aforesaid not regarding, hath never performed the same, though a reasonable time therefor has long since elapsed, but has wholly neglected and refused to endorse said notes, or either of them: that afterwards, when said notes became due and payable, according to the tenor thereof, the maker thereof could not be found, and wholly neglected to pay the same, or either of them; whereupon, said notes, as they severally became due and payable, were duly protested for non-payment thereof; of all which the defendant afterwards, *viz.* on the several days when the same respectively became due and payable, had notice: that by means of the premises, the defendant afterwards, *viz.* at *New-Haven,* on the 28th of *October,* 1837, became liable to pay to the plaintiff the amount of said sum of money in said notes specified, when afterwards requested: that being so liable, he, the defendant, afterwards, *viz.* at *New-Haven,* on the day and year last aforesaid, in consideration thereof, undertook, &c.

The cause was tried at *New-Haven, January* term, 1840, before *Church,* J.

On the trial, the plaintiff, in support of both counts of his declaration, exhibited in evidence, the deposition of *John M. Martin,* Esq., with other evidence, tending to prove, that *Elias Holt,* mentioned in the second count of the declaration, was the duly authorized agent of the defendant, to make the purchase of the lands therein referred to, and to receive a conveyance thereof, and to make the contract stated in that count as having been made by him, as agent of the defendant; and that *Holt* had, as such agent, and pursuant to his authority from the defendant, received from the plaintiff, on or about the 1st of *December,* 1836, a deed of said lands; which deed was produced in court. *Martin,* in his deposition, testified, that a short time prior to the 1st of *November,* 1836, *Elias Holt,* came to his office in the city of *New-York,* and proposed to purchase of *Frederick W. Boardman,* the

*New-Haven,*
*July, 1840.*

Boardman
*v.*
Steele.

plaintiff, who kept his office in the same room, certain lands, situated in *Essex* county, in the state of *Vermont,* as the agent of *Ralph B. Steele,* the defendant, whom he represented to be a resident of *New-Haven,* in the state of *Connecticut;* that after sundry negotiations, it was agreed, between *Holt,* as agent of the defendant, and the plaintiff, that *Holt,* as agent, would give 1100 dollars for said lands, of which 100 dollars should be paid in cash, before the delivery of the deed, and the remaining 1000 dollars should be paid in two promissory notes, of 500 dollars each, which should be endorsed by *James De Forest,* then residing in the city of *New-York,* and by the defendant; that a deed conveying said lands was drawn and executed, by the plaintiff, to the defendant, to be delivered to *Holt,* when he should have complied with the terms of his agreement; that subsequently, *Holt* called at said office, and proposed to the plaintiff, that he should accept two notes, signed by *John Pendleton,* for 500 dollars each, one dated *October* 15th, and the other dated *October* 25th, 1836, payable twelve months after their dates respectively, to the order of *James De Forest,* and by him endorsed; which the plaintiff declined to do, as the notes were not endorsed by the defendant; that *Holt* assigned as a reason for not having procured the endorsement of the defendant, that he had not had an opportunity of seeing him, and procuring his endorsement, but that it was his intention to endorse them, that he came to *New-York* every few days, and that the first time he should come, he would call at the plaintiff's office and endorse them, and that he, *Holt,* would procure the written promise of the defendant to do so; that *Holt* afterwards procured such written promise of the defendant, and delivered it, with the notes, to the plaintiff, and that said deed was then delivered to *Holt;* that all these transactions took place prior to the time said notes respectively fell due; that a judgment on the notes in favour of the plaintiff, was recovered against *Pendleton* and *De Forest,* and an execution, issued thereon, was returned wholly unsatisfied, and that no part of such judgment has ever been paid, to the best of deponent's knowledge and belief; that *Pendleton* and *De Forest,* at the time of obtaining such judgment, were insolvent, as the deponent was informed and believed; that on the 30th of *October,* 1837, the deponent placed in the post-

office of *New-York*, a notice of protest inclosed in a letter to *Ralph B. Steele, New-Haven, Conn.*

The plaintiff also produced in evidence a writing, signed by the defendant, and delivered by *Holt*, at or about the date thereof, to the plaintiff, in these words; " *New-Haven, December* 1st, 1836. Mr. *F. W. Boardman.* Sir, If you will send me the draft of 625 dollars, drawn by *Elias Holt,* at ten days, I will pay it the day it is due. I will also endorse two notes drawn by *John Pendleton,* and endorsed by *James De Forest,* when I come to *New-York.* Yours, with respect, *Ralph B. Steele.*" The plaintiff also exhibited in evidence, the two notes referred to by *Martin,* in his deposition, which the plaintiff claimed to have proved were the same notes referred to, in said writing, signed by the defendant, and received by the plaintiff, as set forth in the second count of his declaration, from *Holt* as agent of the defendant.

It was admitted, that the notes in question were placed, by the plaintiff, in the *Manhattan Bank,* in the city of *New-York,* before they became payable, without the defendant's endorsement, and without any demand having been made of the defendant that he should endorse them ; and that when they respectively fell due, payment thereof was demanded, and that they were protested.

To shew in what manner the demand was made, and notice of non-payment given, the depositions of *James S. Ring* and *John R. Livingston,* were introduced. The former testified, that on the 18th and 28th of *October,* 1837, he was a clerk of *John R. Livingston,* a notary public in the city of *New-York ;* that as such, he, by order of said *Livingston,* on those days, used all diligence to find *John Pendleton,* and to present to him the notes in question for payment, but could not find him ; whereupon the notes were protested for non-payment; and he then served notice of protest, on *James De Forest,* the indorser, at his usual place of business. Being asked what inquiry he made for *Pendleton,* the maker of the notes, in order to demand payment, he replied thus : "I do not now recollect what inquiries I made at that time. My custom is, when about to protest a note, to look in the city directory for the name of the maker of the note ; and if not there, to inquire at the post-office for the maker ; and if I cannot ascertain his residence at the post-office, I make

*New-Haven,*
*July, 1840.*

*Boardman*
*v.*
*Steele.*

demand at the post-office, and being refused payment, I make protest accordingly." Being shewn the directory for the years 1837 and 1838, and requested to say if the name of *John Pendleton* was not there to be found, he answered: " I have examined the directory, and cannot find the name of *John Pendleton.* I, however, find the name of *John B. Pendleton,* whose place of business is set down ' 13 *Broadway,*' ' dwelling-house, 124 *Hudson* st.' Whether I presented the notes at either of those places, I do not now recollect. I think I did not."

*Livingston* testified, that he was a notary public, and as such, at the request of the *Manhattan Bank,* protested the notes in due form of law for non-payment, and caused due notice of said protest to be served on *James De Forest,* the indorser.

It was admitted, that *John Pendleton* then resided in the city of *New-York,* and that notice of non-payment and protest of said notes respectively was immediately transmitted, by the plaintiff, to the defendant, with notice that the plaintiff looked to him for payment thereof, by reason of his written promise to indorse them. It was proved, that the defendant had been frequently in *New-York,* after the execution of the writing signed by him, and before the notes fell due ; but had never endorsed them, or either of them.

The defendant admitted, that he was to have an interest in the premises ; but denied that *Holt* was his agent for the purchase, and claimed to have proved, that he had paid *Holt* for all the interest which he was to have. The plaintiff, on the other hand, offered evidence to prove, and claimed to have proved, that the defendant had not only constituted *Holt* his agent for this purpose, but that he had, after the making of the contract, and after the execution of the deed, ratified such contract, and recognized the deed as his.

In the argument of the cause, the defendant's counsel claimed, that his legal liability, consequent on his promise to endorse the notes, was not that which was stated in the declaration ; and that the court should so charge the jury. The defendant's counsel further claimed, that the plaintiff had not made use of due diligence to demand payment of the maker of the notes, before the protest thereof ; and that, as no demand had been made upon the defendant to endorse

the notes, he could not be made liable ; and that the court should so charge the jury.

The court charged the jury, 1. that unless *Holt* was the agent of the defendant, in making the contract, and purchasing the lands of the plaintiff, either by virtue of a prior authority conferred, or by a subsequent ratification of his acts by the defendant, the plaintiff could not recover. But if the defendant, with knowledge of the acts of *Holt*, in making the contract, had subsequently recognized and approved it, and ratified it, this was equivalent to a prior authority ; and if the jury should believe, that the defendant had executed the written contract, or promise to endorse the notes, for the purpose of carrying into effect the contract made by *Holt*, with the plaintiff, for the purchase of the lands, as his agent, this would amount to such a ratification as would bind the defendant as principal. 2. That if the jury believed the testimony of *James S. Ring* and *John R. Livingston*, due diligence had been used in making presentment to, and demand of payment of said notes of the maker thereof ; and if due protest was made, and due notice had been given to the defendant of non-payment, as the plaintiff claimed, the legal liability of the defendant consequent upon his written promise, was such as was alleged in the second count of the declaration. 3. That if the defendant had been, several times, in the city of *New-York*, as was admitted, by the parties, after the making of the written promise, and before the notes fell due, no special demand upon him to endorse them, was necessary.

The jury returned a verdict for the plaintiff, for the amount of the notes and interest ; and the defendant moved for a new trial, for a mis-direction.

*R. I. Ingersoll* and *Kimberly*, in support of the motion, contended, 1. That the charge was incorrect in relation to the use of due diligence in demanding payment of the notes. In the first place, the facts sworn to, by *Ring* and *Livingston*, if true, did not constitute due diligence. It does not appear, that the holder of the notes did not know where the maker's residence was ; or that *Livingston*, the notary, did not know it ; or that it was not known at the *Manhattan Bank*, where the notes had been left for collection. The clerk never applied to any of the parties to the notes, to the

notary himself, or to the bank, for information on the subject. In the case of *Barnwell* v. *Mitchell*, 3 *Conn. Rep.* 101., the court recognized the doctrine, that the holder of a bill, not knowing the residence of the drawer, should make inquiry of the acceptor, for the drawer's residence. See, also, *Beveridge* v. *Burgis*, 3 *Campb.* 262. *Hill* v. *Varrell*, 3 *Greenl.* 233.

Secondly, whether the clerk used due diligence or not, should, under the circumstances of the case, have been submitted to the jury, as a question of *fact*. *Bateman* v. *Joseph*, 12 *East* 433. S. C. at *nisi prius*, 2 *Campb.* 461. *Browning* & al. v. *Kinnear*, 1 *Niel Gow* 81.

2. That the two notes, together with the written promise to endorse them, having been received, by the plaintiff, in payment of the land, no recovery can be had upon the first count. If the obligation of the defendant is that of an endorser, he is discharged, by the laches of the plaintiff, not only from his liability as endorser, but from the original cause of action. *Champion* v. *Terry*, 3 *Brod. & Bing.* 295. *Jones* v. *Savage*, 6 *Wend.* 658. *Davis* v. *Dodd*, 4 *Taunt.* 602. *Alderson* v. *Langdale*, 3 *B. & Ad.* 660.

3. That the legal liability of the defendant, consequent upon his written promise to endorse, was not that of an indorser, as charged in the second count. The plaintiff, having received and applied the notes as part of the consideration, has his remedy upon the defendant's promise to indorse, for such actual damage as he can prove he has sustained, by the non-performance of that promise.

*Baldwin*, contra, contended, 1. That the jury having found that the defendant was principal in the purchase, and the land not having in fact been paid for, except by the dishonoured notes, the plaintiff was entitled to recover on the first count, unless those notes were, in the condition in which they were delivered to the plaintiff, received as payment, at the risk of the plaintiff. *Bill* v. *Porter*, 9 *Conn. Rep.* 23. 8 *Conn. Rep.* 312. *Byles on Bills*, 219.

2. That if the reception of the notes, with the agreement to indorse, could prevent the plaintiff from recovering on the general count, he would be clearly entitled to recover on the second count ; and the rule of damages would be the same.

This count is framed on the principles sanctioned by the case of *The Taunton and South Boston Turnpike Corporation* v. *Whiting*, 10 *Mass. Rep.* 327. As the defendant neglected to endorse as he had agreed, it was not necessary that any steps should be taken to make demand and give notice. *Van Wart* v. *Wooley* & al. 3 *B. & C.* 439. But he did, in fact, exercise all reasonable diligence ; first, by placing the notes in a bank for collection ; and secondly, by the proper steps pursued by the notary, and the notice proved by *Martin.*

*New-Haven,*
July, 1840.

Boardman
*v.*
Steele.

3. That the rule of damages on the second count, even if the defendant had not been found, by the jury, to be the principal in the purchase, was the correct rule. The defendant could not, by his own wrong, in refusing to endorse as he had agreed, deprive the plaintiff of the damages he would have recovered, if the defendant had actually endorsed the notes.

WILLIAMS, Ch. J. Several questions have been discussed, in this motion, some of which will not require a particular examination.

The first count of this declaration is *assumpsit* for lands sold ; and as the plaintiff has sold and conveyed land to the defendant, there is no reason why he should not recover, unless there is some special contract to prevent, or unless he has received his pay.

The defendant claims, that he has made payment according to the terms of his contract.

To determine whether he is correct, we must advert to the stipulations of the contract, and see what has been done under it.

By the deposition of Mr. *Martin,* it appears, that *Elias Holt,* as agent for the defendant, contracted with the plaintiff, to purchase the land in question for 1100 dollars ; 100 dollars in cash, and two notes of 500 dollars each, to be endorsed by *James De Forest* and the defendant ; and the deed was to be delivered, when the defendant had complied with his engagements : that *Holt* afterwards called, and requested the plaintiff to accept the two notes mentioned in the second count of the declaration, while they were not endorsed by the defendant ; which the plaintiff declined to do, for want of such endorsement : that *Holt* then stated to

*New-Haven,*
*July, 1840.*

*Boardman*
*v.*
*Steele.*

him, the plaintiff, that the defendant was in *New-York,* every few days, and proposed to procure his written promise to endorse said notes, the first time he should come to *New-York:* that such a writing, dated *December* 1st, 1836, was sent to the plaintiff, by the defendant, promising that he, the defendant, would endorse said two notes, when he should come to *New-York;* and about the same time, the plaintiff delivered the deed of the land for which this suit is brought, to the agent of the defendant. It was also proved, that the defendant had since been often in *New-York,* but had not endorsed the notes. The notes were afterwards lodged in a bank in *New-York;* and, when due, were, by a notary, protested. In *January,* 1838, judgment was rendered on said notes against the maker and endorser; and the execution was returned unsatisfied, both being then insolvent.

The defendant claims, that due diligence was not used to find the maker of the note; and that no legal demand was made. The plaintiff claims, that due diligence was used.

If the case was simply this, that the plaintiff had agreed to sell his land to the defendant, for 100 dollars in cash, and two notes, of 500 dollars each, against *Pendleton,* endorsed by *De Forest,* and received the money and notes; it could hardly be denied, that he took the notes at his own risk; and that, upon the receipt of the money and notes, his land was fully paid for. *Whitbeck* v. *Van Ness,* 11 *Johns. Rep.* 409. But in the case before us, something more was to be done. The plaintiff not only contracted for the cash and notes, but that these notes should be endorsed by the defendant. Until that was done, the terms of the contract were not satisfied, and payment was not made. And, when *Holt* proposed to the plaintiff, to receive said notes; and the plaintiff objected, because the defendant had not endorsed them; it was not claimed, on the part of the defendant, but that the plaintiff had a right to require such endorsement. But the agent, in reply, informed him, that *Steele* was in *New-York,* every few days; and then proposed to the plaintiff to take *Steele's* written promise to endorse the notes, when he should come to *New-York;* which was assented to, by the plaintiff. The defendant now claims, that the plaintiff, by accepting the promise of *Steele* to endorse, waived the endorsement itself, and substituted the promise in the place of it; and that, as

the delivery of the notes so endorsed, would have been pay-    *New-Haven,*
July, 1840.
ment, the delivery of the notes without endorsement, accom-
panied with the promise to endorse, is also payment.    Boardman
*v.*
Steele.

That the plaintiff considered this endorsement by the de-
fendant, as an important part of his contract, is apparent
from the fact that he refused to receive the notes until so
endorsed. It is claimed, however, that he has waived this
part of the contract. Is this proved ?

After the plaintiff refused to take these notes without en-
dorsement, the defendant's agent proposed that he would
procure a written agreement from the defendant to endorse
them. The proposition comes from the defendant. It was
one entirely for his benefit. No inducement is held out to
the plaintiff; but it might be important to the defendant to
get the deed, that he might sell the land. And as the notes
were not due under nine or ten months, and as it was repre-
sented to the plaintiff, that the defendant was very often in
*New-York,* and promised to endorse the notes, the first time
he came there; there is no reason to believe, that the plain-
tiff meant to waive his right to endorsement, or to receive the
notes unendorsed, as payment for his lands; but to accommo-
date the defendant, he was willing so far to dispense with the
letter of the contract as to deliver the deed, upon the receipt
of the defendant's written promise that he would endorse the
notes, at a time long before they would become due ; of
course, long before he could make any claim, by virtue of
such endorsement.

By taking this promise to endorse, he certainly could not
have intended to waive the endorsement, but merely to sus-
pend it until the defendant came to town ; and it is equally
certain, that all the ostensible object of the defendant was
obtained, by his receiving the deed. The variation, then,
made in this contract, was, not a variation as to the mode of
payment, but rather as to the means of enforcing it, as the
contract at first stood. The plaintiff might enforce it, by
retaining the deed. That right he gives up, upon the receipt
of the written promise. But he certainly did not mean to
give up the thing itself, which the holding of that deed was
intended to secure, *viz.* payment for his land. But he gave
up the deed as the security, and substituted this promise to
endorse. The object, in both cases, was the same—to com-

pel payment, by means of these notes to be endorsed by the defendant. This was the original contract; and that contract remains unchanged. Strange, indeed, would it be, to say, that when a payment was to be made, by endorsed notes, an agreement to endorse such notes, should, of itself, be a payment. This agreement is, in fact, nothing more than was implied in the original contract itself, and would have been unnecessary, except to repel the inference that the plaintiff waived the endorsement, by giving up the deed and receiving the note.

It has, indeed, been holden, in the state where this contract was made, that where goods are sold and notes taken, the taking of the notes is not of itself payment, unless there is an express agreement to that effect. *Porter* v. *Talcott,* 1 *Cowen* 359. Here, so far from being an agreement to that effect, every circumstance tends to shew, that this could not have been intended. Any other construction would be, to allow the defendant to set up the violation of one contract, to defeat the real intent of the parties in another. We see nothing in this transaction which requires us to give a construction to this contract so harsh and inequitable.

It is said, that the notes became the property of the plaintiff, and so became payment. If they did become the plaintiff's property, it would not follow, that they were, at all events, payment. In *Johnson* v. *Weed* & al. 9 *Johns. Rep.* 310., notes were given for goods sold; when the note was left, the plaintiff objected that it was not endorsed; the defendant said, that would make no difference; it was held, that this was not such a payment as to protect the defendant from a suit for goods sold and delivered. These notes were left with the plaintiff, by the defendant, in part execution of a contract, which it was his duty to fulfil, and which the plaintiff had a right daily to suppose, he was about to fulfil; and while in this state of suspense, the plaintiff's right inchoate, he might hold these notes as a security for the performance of the contract on the part of the defendant. If he received the money upon them, that would be payment for his land. If he did not, he would be bound to render a reasonable account for the notes.

It may be asked, upon what principle is that account to be rendered? Is he to be held to the same terms as an en-

dorser ?   Shall the defendant, who has neglected, in face of his contract, to become an endorser, claim the rights of an endorser ?   The defendant neglects or refuses to assume that responsibility.   It is, then, too much for him to claim, that the plaintiff shall be held to the exact situation of an endorsee.   These rights of the mercantile law must be mutual. At least, the party who is the blamable cause that they are not so, cannot complain if he is held to that rule.

But it is said, as these notes were left with the plaintiff, shall he do nothing with them ; and shall the defendant then lose his hold upon his endorser ?   If any injury in this way results to the defendant, it is to be observed, that it arises entirely from the violation by him of his own contract. Aside, however, from this consideration, under the circumstances in which these notes were left with the plaintiff, it seems to us, that he has done all that could reasonably be required of him.   He put them into a bank for collection ; they were in time handed to a notary for demand and notice. His clerk swears, that the usual enquiries were made for the maker, at the proper time, and he could not be found ; and that due notice was given.   They were then put in suit, and judgments obtained, but no collections made.   Without, therefore, enquiring whether all the diligence had been used, which was necessary to subject an endorser, the court are of opinion, that the defendant has no reason to complain.

The plaintiff having sold his land to the defendant, to receive notes endorsed by him, payable at a future time, in payment ; not having received such notes, and the time of payment having passed ; and the contract having been executed, on the part of the plaintiff; we see no reason why he cannot recover on the general count in his declaration for land sold.   *Brooke* & al. v. *White*, 1 *New Rep.* 330.   *Porter* v. *Talcott*, 1 *Cowen* 376.

There is to be no new trial.

The other Judges were of the same opinion.

New trial not to be granted.